**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOHN A. PORTER, III,

Plaintiff,

v. 5:25-cv-00881 (AMN/MJK)

DAVID PRIMO, in his individual capacity; ADOLPH W. ECKSTEIN, in his individual capacity; CAROL O'CONNOR, in her individual capacity; and ADONIS D. DIXON, in his individual capacity;

Defendants.

---

**APPEARANCES:** **OF COUNSEL:**

**JOHN A. PORTER III**
P.O. Box 2
East Syracuse, NY 13057
Plaintiff *pro se*

**HON. LETITIA JAMES** **ANNA WRIGHT, ESQ**
New York State Attorney General
Syracuse Regional Office
300 S. State Street, Ste. 300
Syracuse, New York 13202
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On July 8, 2025, plaintiff *pro se* John A. Porter, III ("Plaintiff") commenced this action against defendants David Primo ("Defendant Primo"), Carol O'Connor ("Defendant O'Connor"), Adonis D. Dixon ("Defendant Dixon"), and Adolph W. Eckstein ("Defendant Eckstein," together with Defendants Primo, O'Connor, and Dixon, "Defendants"), as well as nineteen other

individuals and institutions who have since been voluntarily dismissed. Dkt. No. 1 ("Complaint"); *see* Dkt. No. 42-1 (the "Proposed Amended Complaint"); Dkt. No. 44 (the "Revised Amended Complaint"). On August 21, 2025, the matter was referred to Magistrate Judge Mitchell J. Katz, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on September 2, 2025, issued a report-recommendation and order recommending that the Complaint be dismissed, with leave to amend as to certain defendants, and without leave to amend as to others, including Defendants. Dkt. No. 41 ("Report-Recommendation"). Magistrate Judge Katz advised that pursuant to 28 U.S.C. § 636(b)(1), Plaintiff had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 24. On September 8, 2025, Plaintiff filed objections to the Report-Recommendation, along with the Proposed Amended Complaint that voluntarily dismissed the bulk of the defendants and claims alleged in the Complaint, leaving only one claim against Defendants and defendant Onondaga County, New York for violation of 42 U.S.C § 1983 ("Section 1983"). Dkt. No. 42. On October 16, 2025, District Court Judge Elizabeth C. Coombe issued a memorandum-decision and order accepting the Proposed Amended Complaint for filing as the operative complaint, directing Plaintiff to file a copy of the Proposed Amended Complaint as the Amended Complaint, dismissing *sua sponte* defendant Onondaga County, and terminating as moot the Report-Recommendation. Dkt. No. 43. That same day, Plaintiff filed the Revised Amended Complaint.[1] Dkt. No. 44.

[1] Plaintiff's Proposed Amended Complaint and Revised Amended Complaint are materially indistinguishable with respect to Defendants. *Compare* Dkt. No. 42-1 (purporting to allege claims against Defendants and against Onondaga County) *with* Dkt. No. 44 (purporting to allege the same claims against Defendants but voluntarily dismissing Onondaga County).

Defendants sought and received an extension of time to file an answer, Dkt. Nos. 46, 48, and now move to dismiss the Revised Amended Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Rule 12"). Dkt. No. 49 ("Motion"). Plaintiff opposed the Motion, Dkt. No. 50, and Defendants filed a reply in further support, Dkt. No. 51. Without seeking leave, Plaintiff filed a sur-reply in further opposition. Dkt. No. 52. Judge Coombe noted the irregularity of this submission but, further noting the "special solicitude" afforded to *pro se* litigants, accepted Plaintiff's sur-reply and permitted Defendants to submit their own sur-reply in the interest of justice. Dkt. No. 53 (citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d. Cir. 1994)). Defendants filed their own sur-reply on December 5, 2025. On June 1, 2026, Judge Coombe recused herself and this case was randomly reassigned to this Court for further proceedings.

For the reasons set forth below, the Court grants the Motion.

## II. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Revised Amended Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund. v. New York City Dep't of Educ.*, 9 F.4th 91, 94 (2d. Cir. 2021) (*per curiam*), or are otherwise matters of public record, *see Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A. The Parties

Plaintiff is a natural person who appears *pro se*.[2] Dkt. No. 44 at 2.[3]

Defendant Primo is the Chief Clerk of the Onondaga County Family Court. *Id.* at 3. Defendants O'Connor, Dixon, and Eckstein are current or former clerks or supervisors of the Onondaga County Family Court. *Id.* Plaintiff purports to sue Defendants in their individual capacities. *Id.*

### B. Plaintiff's Factual Allegations

On January 21, 2025, Plaintiff attempted to submit unspecified filings, apparently to the Onondaga County Family Court. *Id.* Defendant Primo refused to accept Plaintiff's papers or provide further assistance. *Id.* On January 23, 2025, Plaintiff returned and tried again; this time, Defendant Dixon briefly accepted the filings but subsequently returned the documents to Plaintiff after a private conversation with Defendant Primo. *Id.*at 3-4. Thereafter, Plaintiff submitted the same documents by express mail, at a cost of $29.99. *Id.* at 4. On January 30, 2025, Plaintiff returned and apparently confronted Defendant Dixon, who denied having received Plaintiff's filings. *Id.* On February 26, 2025, Plaintiff returned again and attempted to submit a new filing, which Defendant O'Connor time-stamped. *Id.* Defendant O'Connor provided Plaintiff with receipts for his filing, but that filing later disappeared from the record. *Id.* Plaintiff returned thereafter to confront Defendant O'Connor; Defendant Eckstein then summoned law enforcement officers, who removed Plaintiff from the clerk area. *Id.* On March 10 or 11, 2025, Plaintiff

[2] Plaintiff's Proposed and Revised Amended Complaints offer scant facts about his background. The allegations contained in Plaintiff's previous filings suggest he is the father of a child who was a minor as recently as July 2025, and that he was subject to a child support order issued by the Onondaga County Family Court from August 2013 to at least July 2025. Dkt. No. 1 at 4.

[3] Neither the Proposed nor Revised Amended Complaint presents Plaintiff's allegations in consistently numbered paragraphs. *See* Dkt. Nos. 42-1, 44. Citations accordingly refer to the page number on which Plaintiff's relevant allegations appear in the Revised Amended Complaint.

requested to meet with Defendant Primo; Defendant Eckstein informed Plaintiff that Defendant Primo would not speak with him directly but would accept written questions. *Id.* Plaintiff's inability to file his documents prevented him from obtaining a hearing on unspecified jurisdictional challenges relating to an order from the Onondaga County Family Court. *Id.* at 1-2.

Plaintiff further generally alleges that Onondaga County "participates in federal Title IV-D child-support programs," which "do not control or direct individual clerk decisions" but nevertheless "can create administrative pressure that influences filing-office behavior, sometimes favoring collection activity over procedural fairness." *Id.* at 3.

Plaintiff also alleges that the Onondaga County Family Court directed him to serve unspecified papers on or before June 16, 2025 for a June 18, 2025 hearing, and that he did so on June 11; his motion was subsequently dismissed as untimely because New York state procedural law required service eight days in advance of the hearing. *Id.* at 4 (citing C.P.L.R. § 2214(b)).

Plaintiff alleges that he has been harmed because his driver's license was suspended on June 6, 2025 and he "continues to suffer wage garnishments exceeding $29,000." *Id.* at 5.

### C. Plaintiff's Legal Claims

Based on these allegations, the Revised Amended Complaint asserts a cause of action pursuant to Section 1983 for denial of access to courts in violation of the First Amendment. *Id.* Plaintiff seeks compensatory and punitive damages, costs, a declaration that Defendants' conduct violated his rights, and an injunction permanently enjoining Defendants and their successors in office from obstructing, interfering with, or denying Plaintiff's access to Onondaga County Family Court filings or *pro se* submissions. *Id.* at 5-6.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

"[I]n a *pro se* case . . . the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The

Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d. Cir. 1983)). Therefore, courts read *pro se* submissions liberally and interpret them "to raise the strongest arguments that they suggest." *United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 145 (2d Cir. 2017) (per curiam)) (internal quotation marks omitted).

## IV. DISCUSSION

Defendants move for an order dismissing the Proposed Amended Complaint in its entirety. *See generally* Dkt. No. 49. Defendants contend that they have absolute quasi-judicial immunity from suit; or, alternatively, that qualified immunity shields them from liability; and that Plaintiff fails to plead a violation of the right of access to the courts as guaranteed by the First Amendment. Because Defendants are entitled to absolute quasi-judicial immunity, the Court need not reach the latter two grounds.

### A. Procedural Disputes

As an initial matter, the parties dispute which is the operative complaint. Defendants point out that Plaintiff was ordered to file his Proposed Amended Complaint as the operative complaint but instead filed the Revised Amended Complaint.[4] Dkt. No. 49-1 at 1, n.1 (citing Dkt. Nos. 42-1, 44); *see* Dkt. No. 51 at 1. Consequently, Defendants explicitly address their Motion to the Proposed Amended Complaint. Dkt. No. 49-1 at 1, n.1. Plaintiff, in turn, argues that Defendants' failure to address the Revised Amended Complaint renders their Motion defective and urges the Court to deny the Motion on procedural grounds. Dkt. No. 50 at 7-8. In his sur-reply, Plaintiff

---

[4] As noted previously, the Revised Amended Complaint differs from the Proposed Amended Complaint only in respects immaterial to the Motion. *See* Section I, n.1 *supra*.

proposes in the alternative that the Court either clarify that the Revised Amended Complaint is the operative complaint; accept it *nunc pro tunc* as of October 16, 2025; or grant him leave to file the Revised Amended Complaint as a conforming amended complaint under Federal Rule of Civil Procedure 15(a)(2). Dkt. No. 52 at 3-4.

In light of Plaintiff's *pro se* status, it "would be an unnecessary procedural hoop that would waste resources and delay resolution of this action" for the Court to require Plaintiff to refile or to deny the Motion on this procedural basis. *Dimitri v. Velie*, No. 9:24-CV-00273 (AMN/PJE), 2026 WL 850690, at *2 (N.D.N.Y. Mar. 27, 2026) (internal quotation marks omitted). Instead, given the similarity between the two complaints, the Court clarifies that the Revised Amended Complaint, Dkt. No. 44, is the operative complaint for purposes of the Motion, and construes Defendants' arguments as addressing the operative complaint.

Plaintiff additionally argues that his allegations have survived Judge Coombe's *sua sponte* review of the Proposed Amended Complaint pursuant to 28 U.S.C. § 1915(e), Dkt. No. 43, and the Motion therefore "effectively asks the Court to revisit its October 16, 2025 screening order," Dkt. No. 50 at 9. This argument is without merit. As Judge Coombe noted, a complaint should be dismissed *sua sponte* only "when it is 'unmistakably clear' that the underlying case is frivolous or the court lacks jurisdiction." Dkt. No. 43 at 2 (quoting *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, at *1 (2d Cir. Jan. 17, 2024)). This "heightened [] standard" operated in Plaintiff's favor at the screening stage. Dkt. No. 50. Judge Coombe was clear at the screening stage that she "expresse[d] no opinion as to whether Plaintiff's First Amendment clai[m] can withstand a properly filed dispositive motion," Dkt. No. 43 at 5, and the outcome of her decision had no bearing on the Court's authority to resolve the Motion, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d

Cir. 1990) ("[A] district court should look with a far more forgiving eye in examining whether a complaint rests on a meritless legal theory" for purposes of *sua sponte* dismissal.).

**B. Quasi-Judicial Immunity**

Defendants contend that they are immune from Plaintiff's suit because Plaintiff's allegations relate to their roles in the judicial process. Dkt. No. 49-1 at 6. Quasi-judicial immunity has been "extended to court clerks and 'others who perform functions closely associated with the judicial process' when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar." *Parson v. Campbell*, No. 5:25-CV-956 (AJB/MJK), 2025 WL 3514155, *3 (N.D.N.Y. Dec. 8, 2025), *report and recommendation adopted*, No. 5:25-CV-956 (AJB/MJK), 2026 WL 141903 (N.D.N.Y. Jan. 20, 2026), *appeal dismissed*, No. 26-309, 2026 WL 2453971 (2d Cir. July 9, 2026) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is "an immunity from suit" and accordingly "is not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Plaintiff alleges, at bottom, that he attempted to file unspecified documents, and Defendants failed to file his documents or otherwise provide him with assistance. Dkt. No. 44 at 3-4. Courts have routinely held that similar conduct falls within the judicial function and accordingly triggers absolute immunity. In *Bey v. New York*, a father subjected to a temporary restraining order due to suspected child abuse attempted to file an "objection and counterclaim" in Nassau County Family Court, but the deputy chief clerk "refused to file it," and further "did not provide him with a copy of the entire court file upon request." *Bey v. New York*, No. 11-CV-3296 (JS/WDW), 2012 WL 4370272, at *2, *7 (E.D.N.Y. Sept. 21, 2012). The *Bey* court found that the clerk's refusal to accept the plaintiff's papers and to provide a copy of the court file fell within the

ambit of quasi-judicial immunity. *Id.* at *7 (collecting cases). Similarly, in *Kellier v. Ross*, the court found that a court clerk's refusal to accept a litigant's motion to disqualify the judge presiding over his criminal proceedings was "'judicial in nature and an integral part of the judicial process.'" No. 22-CV-2506 (LTS), 2022 WL 1292290, at *4 (S.D.N.Y. Apr. 29, 2022) (quoting *Humphrey v. Ct. Clerk for the Second Cir.*, No. 508-CV-0363 (DNH/DEP), 2008 WL 1945308 (N.D.N.Y. May 1, 2008).

Plaintiff offers three arguments as to why quasi-judicial immunity should not shield Defendants from suit as to their actions regarding his documents. First, Plaintiff contends that Defendants did not exercise a discretionary judicial function in failing to file his papers. Dkt. No. 50 at 20-22 (citing *Gerken v. Gordon*, No. 1:24-CV-00435 (MAD/CFH), 2024 WL 4608307 (N.D.N.Y. Oct. 29, 2024), *report and recommendation adopted*, No. 1:24-CV-435 (MAD/CFH), 2024 WL 5001402 (N.D.N.Y. Dec. 6, 2024), *aff'd*, No. 24-3336, 2025 WL 2847429 (2d Cir. Oct. 8, 2025)). But even tasks "considered ministerial in nature," such as "refusing to acknowledge a litigant's motions or to schedule his court proceedings," fall within the "essential judicial functio[n]" and are accordingly "barred by absolute immunity." *Argentieri v. Clerk of Ct. for Judge Kmiotek*, 420 F. Supp. 2d 162, 165 (W.D.N.Y. 2006).

Plaintiff suggests that a different rule applies where a clerk "initially accepted" or "time-stamped" the filings at issue, because these actions suggest that the filings comply with the rules of filing or otherwise "indicat[e] acceptance." Dkt. No. 50 at 21. But a clerk's immunity from suit is not predicated upon any subjective determination that the filing at issue does not comply with a rule or otherwise should not be accepted; rather, it is predicated on the fact that the management of the court's docket is itself "essential to the judicial process." *Gammons v. Cody*, No. 1:25-CV-941 (AJB/DJS), 2025 WL 2722411, at *4 (N.D.N.Y. Sept. 2, 2025), *report and*

*recommendation adopted*, No. 1:25-CV-941 (AJB/DJS), 2025 WL 2719776 (N.D.N.Y. Sept. 24, 2025); *see also Mireles*, 502 U.S. at 11 (1991) (finding that allegations pertaining to a defendant's subjective decisions, "the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial," cannot overcome judicial immunity).

Plaintiff alternatively suggests that cases like *Argentieri* suggest that clerks enjoy immunity only where they "properly enforced filing rules," and not where they are alleged to have improperly executed their judicial function. Dkt. No. 52 at 12. Such a rule would cabin the applicability of the quasi-judicial immunity doctrine only to instances where the clerk acted in accordance with the law, a rule that runs entirely counter to the purpose of an immunity doctrine. *See Mireles*, 502 U.S. at 12-13 (holding that judicial action, even improper, erroneous, or in excess of judicial authority, is subject to immunity).

Second, Plaintiff contends that Defendant Eckstein's decisions to "summon bailiffs, and ha[ve] Plaintiff physically removed" from the "clerk area" and to "intervene" when Plaintiff attempted to "meet [Defendant] Primo regarding [the] missing filings" were not judicial functions and are therefore not shielded by immunity. Dkt. No. 44 at 4; Dkt. No. 50 at 23. Several courts have held judges absolutely immune from suit for the decision to exclude an individual from a courtroom due to disruption or breach of decorum. *See*, *e.g.*, *Huminski v. Corsones*, 396 F.3d 53, 78-79 (2d Cir. 2005) (finding that the nexus between the judicial function of managing a litigant's ongoing case and actions taken to exclude that litigant from the courthouse justified application of absolute judicial immunity); *Jacobs v. Ali*, No. 18-CV-2909 (RRM/RLM), 2021 WL 12147769, at *5 (E.D.N.Y. June 22, 2021) (applying judicial immunity to decision to exclude litigant from courtroom, even where that decision was "based on pretext, pre-decided prior to the events of that day, and motivated by personal animus"). These decisions accord with the 'principles underlying

judicial immunity," which counsel against subjecting a judge from the rigors of litigation for taking action to preserve the security of the courthouse and preserve her ability to "regularly and dispassionately . . . make decisions adverse to overtly hostile parties." *Huminski*, 396 F.3d. at 78.

The same principles support finding that quasi-judicial immunity applies to Defendant Eckstein's actions here. Plaintiff alleges that he "confronted [Defendant O'Connor] with proof" that his filing had "disappeared from the record," and that he "requested to meet [Defendant] Primo." Dkt. No. 44 at 4. The Court has already concluded that actions and decisions relating to filing or refusing to file documents are properly considered judicial functions. Permitting suit against clerks like Defendant Eckstein for preventing litigants like Plaintiff from "confront[ing]" a fellow clerk due to the outcome of that function, *id.*, would allow "overtly hostile parties" to impose the cost of "defending against—and [possibly] losing—lengthy and costly litigation" on clerks who attempt to protect themselves, their staff, and those in the clerk area from such hostility. *Huminski*, 396 F.3d at 78.

Third, Plaintiff contends that Defendants acted in the "clear absence of jurisdiction," because "[f]iling management (discretionary) is distinct from obstruction, document destruction, and retaliation (non-discretionary and outside official duties)." Dkt. No. 50 at 24-25. Read together with the allegations in the Revised Amended Complaint, this argument amounts to a contention that Defendants had discretion to accept Plaintiff's filings but had no discretion to refuse or discard his filings or remove him from the clerk area. *See* Dkt. No. 44 at 3-4 (alleging that Defendants refused to accept Plaintiff's filings and that other filings "disappeared from the record," and that Defendant Eckstein removed Plaintiff from the clerk area and permitted him to send only written questions to Defendant Primo). But these actions fit within Defendants' judicial role of accepting (or not accepting) a litigant's filings and managing the courthouse. *See Bey*, 2012

WL 4370272, at *8 (finding that clerks were entitled to quasi-judicial immunity for refusing to accept filings); *McKnight v. Middleton*, 699 F. Supp. 2d 507 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) (finding clerk was entitled to absolute immunity for failing to process motions, grant a hearing on a motion, or issue an order); *Huminski*, 396 F.3d 78-79.

The Court accordingly finds that Plaintiff does not allege that Defendants took any action outside of their judicial function and that Defendants are entitled to absolute quasi-judicial immunity from suit for their conduct as alleged in the Revised Amended Complaint.

**C. Remaining Allegations**

The Revised Amended Complaint includes allegations that Plaintiff was "procedural[ly] entrap[ped]" because the Family Court directed him to "serve papers 'on or before June 16' for a June 18 hearing," and then dismissed his motion as untimely pursuant to a state statute mandating service eight days in advance of a hearing. Dkt. No. 44 at 4. Plaintiff offers no allegation that any Defendant was involved in this incident. *Id.* These allegations therefore do not support a claim against any Defendant, and moreover implicate the judicial process such that Defendants would be entitled to quasi-judicial immunity even if they had been involved.

**D. Leave to Amend**

Before a court dismisses a *pro se* complaint, it should grant leave to amend "at least once[,] when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (citing Fed. R. Civ. P. 15(a)). Such an opportunity is not required, however, where the defects warranting dismissal are substantive and repleading would be futile. *See Trombley v. O'Neill*, 929 F. Supp. 2d 81, 106-07 (N.D.N.Y. 2013) (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)). Here, Plaintiff's claims are barred by absolute immunity, so any further amended complaint would not survive a future

motion to dismiss. *See Brady v. Ostrager*, 834 F. App'x 616, 618-19 (2d Cir. 2020) (upholding decision to dismiss with prejudice *pro se* action barred by judicial immunity); *Truesdell v. Wilson*, No. 1:24-CV-1309 (GTS/DJS), 2025 WL 2047966, *1 (N.D.N.Y. July 22, 2025), *appeal dismissed*, No. 25-2031, 2026 WL 472883 (2d Cir. Jan. 22, 2026) (dismissing with prejudice *pro se* suit barred by absolute immunity); *Washington v. Pelella*, No. 3:26-CV-1154 (DNH/DJS), 2026 WL 2058677, *1 (N.D.N.Y. July 16, 2026) (same); *Dickson v. Schenectady Fam. Ct.*, No. 1:22-CV-499, 2022 WL 16961389, *1 (N.D.N.Y. Nov. 16, 2022) (same)). As such, amendment is futile, and the Revised Amended Complaint is dismissed with prejudice and without leave to amend as to all Defendants.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motion to dismiss, Dkt. No. 49, be **GRANTED**; and the Court further

**ORDERS** that Plaintiff's Revised Amended Complaint, Dkt. No. 44, be **DISMISSED with prejudice and without leave to amend** as to all Defendants; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules and close the case.[5]

**IT IS SO ORDERED.**

Dated: September 9, 2026
Albany, New York

Anne M. Nardacci
Anne M. Nardacci
U.S. District Judge

[5] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein.